IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 10-09343 |
| CARLOS SOTO TORRES; GLORIA CORTES ROBLES | CHAPTER 13 |
| Debtors | |
| CARLOS SOTO TORRES; GLORIA CORTES ROBLES | ADV. PROC. 14-00063 |
| Plaintiffs | |
| vs. | |
| ASOCIACION RESIDENTES MIRAFLORES; CHAPTER 13 TRUSTEE | |
| Defendant | |

OPINION AND ORDER

This case is before the court upon Mr. Carlos Soto Torres and Mrs. Gloria Cortés Robles (hereinafter referred to as "Plaintiffs" or "Debtors") *Motion for Partial Summary Judgment and Memorandum of Law in Support Thereof* seeking a determination that the Asociación de Residentes de Miraflores (hereinafter referred to as the "HOA" or "Defendant") willfully violated the automatic stay provisions pursuant to 11 U.S.C. §362(a)(6) when it deactivated Debtors' remote controls in November 2013, thus denying them access to enter their housing complex through the residents' entrance and having to use the visitors' entrance. The HOA filed its *Opposition to Motion for Partial Summary Judgment and Counter Motion for Partial Summary Judgment* seeking a determination that it did not violate the automatic stay provisions because there is no evidence that the Defendant requested from Plaintiffs payment of pre-petition and/or post-petition arrears. The Defendant argues that the Debtors' privileges were

-1-

curtailed because they were in arrears as to interest generated from the late payment of their dues and annual quotas, thus violating the HOA's General Bylaws. The Plaintiffs requests this court to award them actual damages estimated in an amount no less than $50,000; punitive damages in an amount no less than $50,000; and reasonable attorney's fees under 11 U.S.C. §362(k)(1) and (2). For the reasons stated herein the Plaintiffs' *Motion for Partial Summary Judgment* is denied, and the Defendant's *Cross Motion for Partial Summary Judgment* is denied.

### Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(1) and (b)(2). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

### Facts and Procedural Background

The Debtors filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code on October 4, 2010 (lead case, No. 10-09343[1]). The Debtors in their Schedule D- Creditors Holding Secured Claims, listed the HOA as a secured creditor in the amount of $4,352.08 for past due maintenance fees for residence (lead case, Docket No. 1). The 341 meeting of the creditors was held and closed on November 12, 2010 (lead case, Docket Nos. 5 & 13). On January 24, 2011, the HOA filed proof of claim #14-1 as a secured claim based on a judgment over property maintenance fees in the amount of $4,507.40. The Chapter 13 Trustee filed an *Objection to Claim Number 14 filed by Asoc. De Residentes de Miraflores Notice and Certificate of Service* (lead case, Docket No. 46) because it failed to provide evidence of perfection of security. On February 24, 2011, the HOA filed amended proof of claims #14-2 and 14-3. On March 7, 2011, the court denied as moot the Chapter 13 Trustee's objection to

---

[1] References to the lead case are to the entries and documents filed in the bankruptcy case, case number 10-09343 (ESL).

claim #14 because the HOA had filed amended claims #14-2 and 14-3 (lead case, Docket No. 61).

On March 11, 2011, the Debtors' amended Chapter 13 plan was confirmed (lead case, Docket No. 67). The Debtors' amended plan provided for the payment of pre-petition arrears in full to the HOA in the amount of $4,352.08 (lead case, Docket No. 56).

On August 31, 2011, the HOA filed a *Motion to Dismiss* (lead case, Docket No. 87) for failure to make pre-petition and post-petition payments. The HOA stated that the Debtors failed to include in their plan the amount of $1,438.71 for pre-petition arrears which consisted of the following: (a) six (6) monthly payments of $120 each; (b) five (5) late charges and interest charges: $70.39 (May 2010); $74.20 (June 2010); $83.09 (July 2010); $87.15 (August 2010); $113.88 (September 2010) and one (1) annual fee $250 which was payable on June 1, 2010. The post-petition payments owed are in the amount of $490 (2 monthly payments of $120 and 1 annual payment of $250). On October 27, 2011, the Debtors filed their *Opposition to Motion to Dismiss* (lead case, Docket No. 96) in which they provided the court with evidence that they had made the post-petition payments. On October 28, 2011, the court denied the HOA's motion to dismiss based on the Debtors' reply (lead case, Docket No. 97).

On March 10, 2014, the Debtors initiated this adversary proceeding based upon an alleged willful violation of the automatic stay pursuant to 11 U.S.C. §362(a)(6) and for actual damages, punitive damages and legal fees under 11 U.S.C. §362(k)(1) and (k)(2) stemming from the alleged willful violation. The alleged wilful violation consists of the following: (i) in November 2013 the Defendant deactivated the Debtors' remote controls and the same are still deactivated as of the date of this filing (March 10, 2014). The Debtors have to use the visitor's entrance. The HOA does not allow the entry of guests to their residential complex, unless the Debtors go personally to the entrance gate and escort their guests to their residence. The Defendant does not permit the Debtors to use the community facilities (such as the swimming pool and gym) of the residential complex; and (ii) the HOA has continued to accrue post-petition interest, fees and penalties to their pre-petition claim (Docket No. 1). On May 14,

2014, HOA filed its *Answer to the Complaint and Counterclaim* (Docket No. 14). HOA in its *Counterclaim* alleges that Plaintiffs have failed to keep up with their post-petition payment of their dues and they owe $1,200. On May 21, 2014, the Defendants filed their *Answer to Counterclaim* (Docket No. 15).

On November 14, 2014, the parties filed the *Joint Proposed Pre- Trial Report* (Docket No. 21). On March 2, 2015, the Plaintiffs filed their *Statement of Uncontested Material Facts* (Docket No. 25) and their Motion for Partial Summary Judgment and Memorandum of Law in Support Thereof (Docket No. 26). The Plaintiffs in their motion for partial summary judgment argue that the following actions taken by the Defendant constitute collection actions (of a pre-petition debt) under section 362(a)(6): (1) deactivation of Plaintiffs' remote controls to open the gate to the community; (2) deny the Plaintiffs access and use of communal facilities such as swimming pool and gym; and (3) if the Plaintiffs had guests, they would  have to personally arrive at the entrance gate in order for their guests to be granted access to Plaintiffs' residential community. The Plaintiffs further argue that: (i) "…it is not difficult to conclude that the formerly described actions  are designed to serve both as a deterrent and as a way to force the resident into bringing their payments up to date. The burdensome effect of these measures simply 'goes away' with the payment of the underlying debt;" and (ii) the Debtors requested a statement from the HOA which reflected a balance of $10,295.16 as of January 2014. The statement reflects that the HOA has continued to accrue interest on the pre-petition balance despite the imposition of the automatic stay; and (iii) they are current in both their pre-petition and post-petition payments to the HOA (Docket No. 26).  On April 13, 2015, the HOA filed a *Motion for Final Extension for Opposition to Motion for Partial Summary Judgment* (Docket No. 36) and court granted the same on April 14, 2015 (Docket No. 37).

On April 24, 2015, the HOA filed its *Opposition to Motion for Partial Summary Judgment and Counter Motion for Partial Summary Judgment* (Docket No. 39) arguing that: (i) the issue before the court is not about pre-petition debt, but about post-petition fees which are paid outside the plan. There is no evidence that Defendant sent Plaintiffs any request for

payment or demand for payment of post-petition arrears. There are no collection letters or complaints filed in state court; (ii) the Debtors never sent the administration any documents to evince payment of post-petition fees; (iii) Plaintiff's Exhibit F (Docket No. 25-6) reflects that Defendants paid their post-petition payments late, which entails a 2% interest per month charge and this can lead to the deactivation of their beepers when the equivalent of two (2) months has been accumulated. Plaintiffs also paid their annual quotas late, which are due on June 30 of each year. As evidenced by Plaintiffs' Exhibit F the annual quota was paid on October 2011, August 2012, October 2013 and December 2014. Plaintiffs' Exhibit G (Docket No. 25) reflects that as of July 2013 the interest arrears exceeded the equivalent of two (2) months, meaning that Plaintiffs were in violation of the regulations and their privileges could be curtailed; (iv) the facts of this case are inapposite to the case of <u>Otero Rivera v. Lake Berkley Resort Master Ass'n</u> (<u>In re Otero Rivera</u>), 511 B.R. 6 (Bankr. D.P.R. 2014) in which several attempts to collect pre-petition debt and actual collection of monies were made to satisfy the pre-petition debt; (v) contrary to Plaintiffs' allegations, they were not up to date with their monthly and annual quotas. Plaintiffs always paid their post-petition dues late, and interest accrued. The amount owed by Plaintiffs at this time is $1,783.06 pursuant to Manuel E. Pérez's statement under penalty of perjury (Docket No. 39-4, Exhibit 3); and (vi) Plaintiffs were not complying with the plan because they were not paying on time and thus their post-petition debt was accruing interest.

On May 5, 2015, the Plaintiffs filed a *Motion for Leave to File a Reply* (Docket No. 44) and the court granted the same on May 6, 2015 (Docket No. 45). On May 27, 2015, the Plaintiffs filed their *Reply to Defendant's Opposition to Motion for Partial Summary Judgment* (Docket No. 52) in which they state that there are three (3) controversies before the court; namely: (i) whether the Defendant willfully violated the automatic stay; (ii) whether the Plaintiffs have made post-petition payments to the Defendant; and (iii) whether the Plaintiffs owe any interest and penalties to the Defendant for post-petition payments made late. Plaintiffs argue that: (i) the Defendant has continued to accrue interest and penalties to a single

commingled balance composed of both pre-petition and post-petition amounts. "Defendant cannot come now to argue that their collection actions were allegations directed only at post-petition amounts when the documents prepared by [D]efendant itself show otherwise;" (ii) "…the automatic stay applies to the collection of both pre-petition and post-petition fees. The [D]efendant knew that it could not take collection actions for either pre and post-petition amounts without first seeking relief from the stay;" (iii) Defendant admits that the post-petition payments have been made, but some were made late. Thus, the only amounts Plaintiffs may owe are interest and penalties for late payments; and (iv) the Defendant has failed to provide a detailed account that discloses the late payments and how much interest and/or penalties these late payments have accrued. Without a detailed account statement, the Plaintiffs cannot evaluate whether the HOA has properly credited their post-petition payments. On May 27, 2015, the Plaintiffs filed their *Reply to Defendant's Statement of Contested Facts Filed at Docket 39-1* (Docket No. 53). On May 28, 2015, the Plaintiffs also filed their *Opposing Statement to Defendant's Statement of Uncontested Facts Filed at Docket 39-5* (Docket No. 54). On June 22, 2015, the Plaintiffs filed their *Opposition to Defendant's Counter Motion for Summary Judgment* (Docket No. 59) in which they argue the following: (i) the Plaintiffs acknowledge that some of the post-petition payments were made late, thus if Plaintiffs owe anything to Defendant it is due to interests and/or penalties for late payments; (ii) the Defendant has not provided the detail of the late payments and the corresponding interest and/or penalties these late payments have accrued. Defendant's Exhibit 3 states that the amount owed is $1,783.06 but fails to provide information as to how this amount was calculated; (iii) pursuant to the Defendant's bylaws there is a procedure that the HOA must follow prior to taking action against a resident who is behind on his or her payments. The bylaws provide that if the resident is falls behind on two (2) or more monthly payments, the HOA will send a letter to the resident through certified mail. The bylaws further provide that the resident has ten (10) days to respond to the letter with evidence of payment (Docket No. 39-3, Exhibit 2, pg. 19); and (iv) "…although the [D]efendant claims that the actions taken against the [P]laintiffs were

-6-

because of arrears for post-petition payments, the fact is that [D]efendant has not show[n] compliance with their own bylaws prior to taking actions against the [P]laintiffs. The [D]efendant did not notify the [P]laintiffs with a certified letter and did not give the [P]laintiffs the 10 days that the bylaws afford to provide evidence of payment. This shows that the actions taken against the [P]laintiffs could not have been due to arrears on post-petition payments since, if that was the case, the [D]efendant would have notified the [P]laintiffs with a certified letter prior to taking action. The [D]efendant has not provided evidence of sending the certified letter to the [P]laintiffs, which shows that either [D]efendant's allegation is not true or that [D]efendant failed to comply with their own Bylaws." (Docket No. 59).

The issue before the court is whether the post-petition deactivation of the Debtors' beepers and the denial of access to use the community facilities (such as the swimming pool and gym) of the residential complex constitute a violation of the automatic stay provisions. The court must first resolve whether the deactivation of the beepers was due to failure to pay post-petition payments.

The following are the uncontested material facts as stated by the parties pursuant to their *Statements of Uncontested Material Facts* (Docket Nos. 25 & 39-5). The court notes that the Defendant filed a *Statement of Contested Material Facts* (Docket No. 39-1) by which it contests several alleged uncontested facts included by the Plaintiffs in their *Statement of Uncontested Material Facts*. The Plaintiffs filed their *Opposing Statement to Defendant's Statement of Uncontested Facts Filed at Docket 39-5* (Docket No. 54).

Material Uncontested Facts

1. The Debtor filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code on October 4, 2010.

2. Debtors listed HOA in their Schedule D- Creditors Holding Secured Claims as a secured creditor of the estate with a claim of $4,352.08 for "past due maintenance fees for residence."

3. On January 24, 2011, the HOA filed proof of claim #14-1 as a secured creditor with a claim of $4,507.40. On February 24, 2011, the HOA filed amended proof of claims #14-2 and 14-3 to attach evidence of perfection of security as requested by the Chapter 13 Trustee.

4. After the 341 meeting of creditors, the Debtors' attorney discussed with the HOA's attorney the issue of the deactivation of the beepers and requested that the same be activated. Not long after the meeting of creditors, the Debtors did not encounter any problems to open the gate with the beepers or the use of the communal facilities.

5. On March 11, 2011, the Debtors' Chapter 13 plan was confirmed and the same proposed to cure the arrears owed to the HOA and maintain the regular post-petition payments to said creditor.

6. As of the date of the filing of the adversary proceeding, the Chapter 13 Trustee has paid the HOA the amount of $3,512.97 on account of its secured claim.

7. The residential complex where the Debtors live has an access control system that is administered by the HOA. The HOA is authorized to collect a monthly fee from the residents of the community to cover the administrative costs of the access control system as well as the maintenance of the communal facilities.

8. The HOA's bylaws establish that if a resident fails to pay the maintenance fee for two (2) or more months, the HOA is authorized under Article VIII, Section 3(B)[2] of its bylaws to disallow entrance to the resident using the beeper and the use of the communal facilities, such as the gym and pool.

---

[2] Article VIII, Section 3(B) of the HOA's General Regulations provides: "Failure to meet payment of dues for two (2) or more months, or its equivalent, including debts that are the result of established penalties, shall entail the suspension of entrance with beeper to the development and the privilege to have access to recreational facilities such as the pool and the gym, the sauna and the basketball courts and any other facility that the association may habilitate and construct in the future with access control. Once payment in a bank account controlled by the Association is confirmed, the reactivation of the beeper and the magnetic card shall be done within the following three working days at a cost of $5 per occasion." (Docket No. 35).

9. If a resident fails to make the maintenance fee payments for more than sixty (60) days, pursuant to Article VIII, Section 3(D)[3] of the bylaws, he or she loses the privilege of announced visits and the resident must appear at the security gate to sign an entrance form for the visitor.

10. During the month of November 2013, the Plaintiffs were unable to open the gate with their beepers because they had been deactivated.

11. The security guard informed them that their beepers were not working because they had a debt with the HOA. The security guard informed them that he could not grant access to the residential complex, unless they followed the procedure for delinquent accounts which requires the resident to enter through the visitors' lane.

12. During January 2014, the Debtors requested the HOA a statement of their account which disclosed a balance of $10,295.16 as of January 23, 2014.

13. Plaintiffs acknowledge that some of the post-petition payments were not made on time. As such, if the Plaintiffs owe anything to the Defendant, it can only be interest and/or penalties for late payments. Plaintiffs have included as an Exhibit a copy with increased font size that details the receipts for the payments made in the year 2011 (Docket No. 59).

<u>Applicable Law and Analysis</u>

*Standard for Motion for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure, is applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[3] Article VIII, Section 3(D) of the HOA's General Regulations provides: "Failure to pay dues, for sixty (60) days or more, will lead to the loss of the privilege of announcing all visitors. For access to the development, the visitor shall have to make contact with the home owner who shall in turn be required to come over to the security shack to authorize the entry of the visitor by signature." (Docket No. 35).

party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; *see also*, In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." Wright, Miller & Kane, Federal Practice and Procedure, 3d, Vol 10A, § 2712 at 198. "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id. at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute, thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970). See also López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. See also, Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). See also, Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

For the reasons explained below, this court denies the Plaintiffs' motion for summary judgment and denies the Defendant's cross motion for summary judgment.

*Violation of the Automatic Stay*

The automatic stay in 11 U.S.C. §362(a) is one of the basic protections under the Bankruptcy Code and becomes operative by the filing of the bankruptcy petition. Soares v. Brockton Credit Union (In re Soares), 107 F. 3d 969, 971 (1st Cir. 1997). The automatic stay is extremely broad in scope and, "aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate." Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.03 (16th ed. 2015). Furthermore, the automatic stay also protects creditors since it prevents the "dismemberment of a debtor's assets by individual creditors levying on the property. This promotes the bankruptcy goal of equality of distribution" Id. The automatic stay provides debtors with one of the cornerstone protections under bankruptcy law, giving debtors a "breathing room" from the pressures of their creditors. See In re Soares, 107 F. 3d at 975. Given its utmost importance in the bankruptcy system, courts "must display a certain rigor in reacting to violations of the automatic stay." In re Soares, 107 F. 3d. at 975-976.

The First Circuit in Laboy v. Doral Mortg. Corp. (In re Laboy), 647 F. 3d 367, 374 (1st Cir. 2011) stated the following regarding whether a violation is deemed "willful:" "[a] violation is 'willful' if a 'creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case.'" In re Laboy, 647 F. 3d. at 374 citing In re McMullen, 386 F. 3d 320, 330 (1st Cir. 2004). This court in the case of In re Soto Rios, 2009 Bankr. Lexis 2992 (Bankr. D.P.R. 2009) discussed the standard for a willful violation of the automatic under Section 362(k) and stated the following:

> "Section 362(k)(1) allows an individual to recover actual damages, costs and attorneys' fees, and in appropriate circumstances punitive damages when he or she is injured by a willful violation of the automatic stay. See 11 U.S.C. §362(k)(1). "A willful violation does not require a specific intent to violate the automatic stay. The standard for a willful violation of the automatic stay under §362(h) is met if there is knowledge of the stay and

if the Defendant intended the actions which constituted the violation." [4] Fleet Mortg. Group. Inc. v. Kaneb, 196 F. 3d 265, 269 (1st Cir. 1994). "The words 'shall recover' indicate that Congress intended that the award of actual damages, costs and attorneys' fees be mandatory upon a finding of a willful violation of the stay." Heghmann v. Indorf (In re Heghmann), 316 B.R. 395, 405 footnote 9 (B.A.P. 1st Cir. 2004)(quoting Ramirez v. Fuselier (In re Ramirez), 183 B.R. 583, 589 (B.A.P. 9th Cir. 1995)); See In re Atamian, 344 B.R. 200, 205 (Bankr. D. Mass. 2006); Parker v. Boston Univ. (In re Parker), 334 B.R. 529, 536-537 (Bankr. D. Mass. 2005). Moreover, a good faith belief in a right to certain property is irrelevant in determining the willfulness in an automatic stay violation. Fleet Mortg. Group Inc. v. Kaneb, 196 F. 3d at 268-269. The burden is on the debtor to prove by a preponderance of the evidence that he suffered damages as a consequence of the violation of the automatic stay. See In re Heghmann, 316 B.R. at 404-405. Under Section 362(k)(1) of the Bankruptcy Code actual damages should only be awarded if there is concrete evidence which supports with reasonable certainty the amount of the award. Id. At 405." In re Soto Rios, 2009 Bankr. Lexis 2992, *13-14.

Section 362(a)(6) stays, "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §362(a)(6). "The wording of this provision is somewhat similar to that of section 362(a)(1) but the provision applies to any 'act' whether or not that act is related to an 'action' or a 'proceeding.' Thus, any act taken to collect, assess or recover a prepetition claim against the debtor, whether the act is taken against the estate or against the debtor is stayed." Crespo Torres v. Santander Fin. Servs. (In re Torres), 532 B.R. 195, 2001 (Bankr. D.P.R. 2015) citing Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.03[8] (16th ed. 2015). Amongst the acts covered by section 362(a)(6) are actions taken by a creditor to induce debt payment, such as withholding a student's transcript. Id. at 362.03[8][a]. Some courts have applied a "coercive effects" test which is basically whether a creditor "acts or fails to act, in a coercive manner, with the sole purpose of collecting that debt. This 'test' can't be found in the Code, and situations which it applies will be rare, because most act or failures to act have multiple purposes, such as minimizing risk based on creditworthiness." In re Kuehn, 563 F. 3d 289, 292 (7th Cir. 2009); Eagle v. Big Muddy River Correctional Center/Illinois Dept. of Corrections (In re Eagle), 2011

---

[4] Section 362(k)(1) was previously codified as subsection 362(h) of the Bankruptcy Code.

Bankr. Lexis 2352, *6 (Bankr. S.D. Ill. 2011) ("A creditor acts to collect a debt if it acts or fails to act, in a coercive manner, with the sole purpose of collecting that debt").

"Section 362(a)(6) is intended to prevent creditor harassment of the debtor in attempting to collect prepetition debts. The conduct prohibited ranges from that of an informal nature, such as by telephone contact or by dunning letters, to more formal judicial and administrative proceedings that are also stayed under subsection (a)(1)." Id. The purpose of section 362(a)(6) is "to benefit a debtor by preventing harassment and frustration of rehabilitation efforts through pursuit by creditors in individual actions." In re Duke, 79 F. 3d 43, 45 (7th Cir. 1996) citing Matthews v. Rosene, 739 F. 2d 249, 251 (7th Cir. 1984).

In the instant case, it is undisputed that the Defendant was duly noticed of the Plaintiffs' bankruptcy petition and it was included as a secured creditor in the Debtors' Schedule D. After the 341 meeting of creditors was held on November 12, 2010 (Docket Nos. 5 & 13), the Debtors' attorney discussed with the HOA's attorney the issue of the deactivation of the beepers and requested that the same be activated. Not long after the meeting of creditors, the Debtors did not encounter any problems to open the gate with the beepers or the use of the communal facilities. Debtors' confirmed plan disclosed that the Chapter 13 Trustee would pay the HOA's pre-petition claim in the amount of $4,3525.08 through the plan. The Chapter 13 confirmed plan also disclosed that the Debtors would maintain regular payments directly to the HOA (Docket Nos. 56 & 67). The Chapter 13 plan was confirmed on March 11, 2011. During the month of November 2013, the Plaintiffs' beepers were deactivated and thus, they were unable to enter their residential complex through the residents' entrance. They had to enter through the visitors' gate. The HOA denied the Plaintiffs access to the communal facilities such as the swimming pool and gym.

It is uncontested that the Plaintiffs' beepers were deactivated because they have a pending debt with the HOA. According to the HOA, the debt consists of failure to pay certain post-petition payments in a timely manner which resulted in interests and late charges to accrue. In its counterclaim, the HOA claims that the Debtors have failed to keep up with their post-

-14-

petition payments and that the Plaintiffs owe $1,200 for post-petition dues, costs, interests and attorney's fees. A breakdown of these charges was not provided (Docket No. 14). As part of the supporting documentation for the HOA's *Opposition to Motion for Partial Summary Judgment and Counter Motion for Partial Summary Judgment* (Docket No. 39), a statement under penalty of perjury by Mr. Manuel Pérez, the HOA's administrator, was submitted. Such statement was dated April 20, 2015 and stated that Mr. Pérez is the hired administrator of the HOA since March 15, 2014. Mr. Pérez concludes that as of today, meaning April 20, 2015, the "bankruptcy protected balance" is $1,254.55. He also concludes that as of April 20, 2015, "the unpaid balance after the protected amount" is $1,783.06. He states that, "[a]fter December 31, 2010, there were no payments received for AREMIRA [HOA] until October 4, 2011; ten (10) months after the protected balance." He also stated that none of the monthly payments received for the above account were made on the established date. The statement certifies that the same was "[e]xecuted under penalty of perjury in San Juan, Puerto Rico, this 16th day of June, 2013" [sic] (Docket No. 39-4).

The court finds that there are several inconsistencies with Mr. Pérez's statement. The statement has conflicting dates, given that the first page is dated April 20, 2015 and it states that it was executed on June 16, 2013 which is prior to the date (March 15, 2014) that the HOA hired Mr. Pérez. According to Mr. Pérez, as of April 20, 2015, the "bankruptcy protected balance" was $1, 254.55. However, this figure is inconsistent with the disbursement information for this particular claim which discloses that this claim was paid in full on September 3, 2014 and that the total amount disbursed by the Chapter 13 Trustee was $4,507.40 in conformity with the HOA's amended proof of claim #14-3 (Docket No. 25-5, Exhibit E). Moreover, Mr. Pérez's statement that, "[a]fter December 31, 2010, there were no payments received for AREMIRA [HOA] until October 4, 2011; ten (10) months after the protected balance" is inconsistent with the payment receipts submitted by the Debtors for the year 2011 which evinces multiple payment receipts for the year 2011 (Docket No. 59, pgs. 8-19). The court finds that the HOA's allegations regarding the amounts owed are inconsistent. Moreover, the HOA has not provided

the Debtors with a detailed breakdown of the amounts owed post-petition, in particular as of November 2013 when it deactivated the Debtors' beepers.

It is unclear from the documentation submitted whether the "debt" for the HOA maintenance fees (which was the underlying reason for the deactivation of the beepers) was both pre-petition and/ or post- petition because the HOA did not issue a statement of account trying to collect the same or at least none was submitted to the court. Thus, at this juncture, there is no evidence that the HOA acted in a coercive manner by deactivating the Debtors' beepers to induce collection of a pre-petition debt pursuant to section 362(a)(6), or that the actions taken by the HOA were only for post-petition arrears and in accordance with the regulations.

Conclusion

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is denied and Defendant's cross motion for partial summary judgment is denied. A trial on the merits is hereby scheduled for January 20, 2016 at 9:30 am. Ten (10) days prior to the trial each party shall submit proposed findings of fact and conclusions of law. Each proposed finding shall refer to either a witness or a document. The parties shall also file ten (10) days prior to the trial copy of the exhibits pre-marked, as well as an index to the same.

SO ORDERED.

In San Juan, Puerto Rico, this 5th day of October, 2015.

Enrique S. Lamoutte
United States Bankruptcy Judge